No. 22-2067

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

KAREN R. HIRLSTON,

*Plaintiff-Appellant,*

v.

COSTCO WHOLESALE CORPORATION,

*Defendant-Appellee*

---

Appeal from the United States District Court
for the Southern District of Indiana,
Case No. 1:17-cv-04699-TWP
The Honorable Tanya Walton Pratt, Chief Judge, Presiding

---

## BRIEF OF DEFENDANT-APPELLEE

---

Erin Dougherty Foley
edfoley@seyfarth.com
Sara Eber Fowler
sfowler@seyfarth.com
Kyla Joanne Miller
kjmiller@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Phone: (312) 460-5000
Fax:   (312) 460-7000

Kiran Aftab Seldon
kseldon@seyfarth.com
James M. Harris
jmharris@seyfarth.com
SEYFARTH SHAW LLP
2029 Century Park East
Suite 3500
Los Angeles, California 90067
Phone: (310) 277-7200
Fax: (310) 201-5219

**Counsel for Defendant-Appellee**
November 4, 2022

## APPELLEE'S CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for Defendant-Appellee furnishes the following statement in compliance with Circuit Rule 26.1:

<u>Appellate Court No.</u>: 22-2067

<u>Short Caption</u>: *Karen R. Hirlston v. Costco Wholesale Corporation*

(1)   The full name of every party that the attorney represents in the case:

### Costco Wholesale Corporation

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

### Seyfarth Shaw LLP

(3)   If the party or amicus is a corporation:

  i)     Identify all its parent corporations, if any; and

### N/A

  ii)    List any publicly held company that owns 10% or more of the party's or amicus' stock:

### N/A

Attorney's Signature: <u>/s/ *Erin Dougherty Foley*</u> Date: November 4, 2022

Attorney's Printed Name: Erin Dougherty Foley

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). **Yes**

| Address: | Seyfarth Shaw LLP | Phone: (312) 460-5000 |
|---|---|---|
| | 233 South Wacker Drive, Suite 8000 | Fax: (312) 460-7000 |
| | Chicago, Illinois 60606 | Email: edfoley@seyfarth.com |

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................... 2

STATEMENT OF THE CASE ..................................................... 3

    A.   The parties. ........................................................... 3

    B.   Hirlston's complaint ................................................. 3

    C.   Pre-trial proceedings. ............................................... 3

    D.   The trial. .............................................................. 4

    E.   Summary of trial evidence. ........................................ 4

         1.   Hirlston starts as Optical Manager in 2010 .............. 4

            (i)    The Optical Department .................................... 5

            (ii)   The Optical Manager position. ......................... 5

         2.   Costco's accommodation policies. ................................ 8

         3.   Hirlston initiates the job accommodation process in September 2015. ..................................... 10

         4.   The November 2015 job accommodation meeting. ................................................... 12

         5.   Costco places Hirlston on leave and she later accepts a Hearing Aid Attendant position. .............. 17

         6.   Hirlston continues working until an unrelated second leave of absence in September 2019. ............ 18

    F.   Relevant trial proceedings .......................................... 19

         1.   The district court permits both parties to introduce photographs taken after close of discovery. ................................................. 19

         2.   Discussions regarding "qualified" jury instruction. ............................................. 21

         3.   Discussions regarding the special verdict form. ...... 24

G.   The jury finds for Costco on the ADA accommodation and disparate treatment claims........................................... 27

H.   The district court finds for Costco on the ADA retaliation claim.................................................................. 27

I.   The order denying Hirlston's new trial motion................. 28

SUMMARY OF ARGUMENT ........................................................... 30

STANDARD OF REVIEW .............................................................. 32

ARGUMENT ................................................................................. 33

I.   Hirlston is Not Entitled to a New Trial Because Instruction 19 Was Neither Plainly Erroneous Nor Prejudicial.................... 33

A.   Standard of review....................................................... 33

B.   Hirlston never objected to—and in fact invited—the alleged error in Instruction 19 ........................................... 35

C.   Instruction 19 was legally correct and not plainly erroneous ...................................................................... 38

D.   Hirlston fails to establish that Instruction 19 was prejudicial..................................................................... 44

II.   Hirlston is Not Entitled to a New Trial Because the Special Verdict Form Was Neither Plainly Erroneous Nor Prejudicial ................................................................. 46

A.   Standard of review........................................................... 46

B.   Hirlston never objected to Question 1 ................................ 47

C.   The special verdict question was not plainly erroneous ...................................................................... 50

D.   Hirlston fails to establish that Question 1 was prejudicial..................................................................... 53

III.   The Admission of Two Photos of Storage Cubbies Was Neither an Abuse of Discretion Nor Prejudicial ........................... 55

A.   Standard of review........................................................... 55

      B.    The district court was within its discretion to admit the photos. ............................................................. 56

      C.    Admission of the photos was not prejudicial. ..................... 60

IV.   Hirlston is Not Entitled to a New Trial on the Retaliation Claim ............................................................................ 66

CONCLUSION ................................................................................. 66

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ammons-Lewis v. Metro. Water Reclamation Dist.*,
    488 F.3d 739 (7th Cir. 2007)............................................................ 34, 35, 41

*Burzlaff v. Thoroughbred Motorsports, Inc.*,
    758 F.3d 841 (7th Cir. 2014).................................................................. 39

*Carter v. Fam. Video Movie Club, Inc.*,
    2013 WL 3989421 (S.D. Ind. Aug. 2, 2013) ................................................ 41

*Chlopek v. Fed. Ins. Co.*,
    499 F.3d 692 (7th Cir. 2007).................................................................. 52

*David v. Caterpillar, Inc.*,
    324 F.3d 851 (7th Cir. 2003).................................................................. 60

*EEOC v. Mgmt. Hosp. of Racine*,
    666 F.3d 422 (7th Cir. 2012).................................................................. 52

*G&G Closed Cir. Events v. Castillo*,
    2019 WL 3554228 (N.D. Ill. Aug. 5, 2019)................................................ 53

*Happel v. Walmart Stores, Inc.*,
    602 F.3d 820 (7th Cir. 2010).................................................................. 51

*Hasham v. California State Bd. of Equalization*,
    200 F.3d 1035 (7th Cir. 2000)......................................................... 55, 56, 61

*Haynes v. U.S.*,
    936 F.3d 683 (7th Cir. 2019).................................................................. 43

*Higbee v. Sentry Ins. Co.*,
    440 F.3d 408 (7th Cir. 2006).................................................................. 35

*Hojnacki v. Klein-Acosta*,
    285 F.3d 544 (7th Cir. 2002).................................................................. 54

*Holmes v. Elgin, Joliet & E. Ry. Co.*,
    18 F.3d 1393 (7th Cir. 1994).................................................................. 33

*Matter of Innovative Const. Sys., Inc.*,
    793 F.2d 875 (7th Cir. 1986)......................................................... 47

*Jordan v. Binns*,
    712 F.3d 1123 (7th Cir. 2013)..................................................... 61

*Kuberski v. Rev Recreation Grp., Inc.*,
    5 F.4th 775 (7th Cir. 2021) .......................................................... 45

*Latin Am. Music Co. v. Am. Soc. of Composers Authors &*
    *Publishers*,
    593 F.3d 95 (1st Cir. 2010) .......................................................... 47

*Lewis v. City of Chicago Police Dep't*,
    590 F.3d 427 (7th Cir. 2009)..............................................*passim*

*Majors v. Gen. Elec. Co.*,
    714 F.3d 527 (7th Cir. 2013)....................................................... 40

*Malone v. Reliastar Life Ins. Co.*,
    558 F.3d 683 (7th Cir. 2009)....................................................... 47

*McGuire v. Davidson Mfg. Corp.*,
    398 F.3d 1005 (8th Cir. 2005)............................................... 47, 48

*Mesman v. Crane Pro Servs.*,
    512 F.3d 352 (7th Cir. 2008)....................................................... 35

*Mlsna v. Union Pacific Railroad Co.*,
    975 F.3d 629 (7th Cir. 2020)....................................................... 53

*MMG Financial Corp. v. Midwest Amusements Park*,
    630 F.3d 651 (7th Cir. 2011)....................................................... 50

*Naeem v. McKesson Drug Co.*,
    444 F.3d 593 (7th Cir. 2006)....................................................... 35

*Prymer v. Ogden*,
    29 F.3d 1208 (7th Cir. 1994)................................................... 58, 59

*Reynolds v. Green*,
    184 F.3d 589 (6th Cir. 1999)....................................................... 47

*Robinson v. Perales*,
 894 F.3d 818 (7th Cir. 2018)........................................................ 50

*Romero v. Cincinnati Inc.*,
 171 F.3d 1091 (7th Cir. 1999)................................................. 32, 33

*Saccameno v. U.S. Bank Nat'l Ass'n*,
 943 F.3d 1071 (7th Cir. 2019)...................................................... 46

*Sanford v. Thor Indus., Inc.*,
 286 F. Supp. 3d 938 (N.D. Ind. 2018) ......................................... 46

*Schmitz v. Canadian Pac. Ry. Co.*,
 454 F.3d 678 (7th Cir. 2006)........................................................ 38

*Schobert v. Illinois Dep't of Transp.*,
 304 F.3d 725 (7th Cir. 2002)................................................... 35, 44

*Shick v. Illinois Dep't of Hum. Servs.*,
 307 F.3d 605 (7th Cir. 2002)........................................................ 56

*Stern v. St. Anthony's Health Ctr.*,
 788 F.3d 276 (7th Cir. 2015)........................................................ 64

*U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*,
 852 F.2d 313 (7th Cir. 1988)................................................... 47, 51

*U.S. v. Andrus*,
 775 F.2d 825 (7th Cir. 1985)........................................................ 60

*U.S. v. Edwards*,
 869 F.3d 490 (7th Cir. 2017)........................................................ 39

*U.S. v. Field*,
 875 F.2d 130 (7th Cir. 1989)........................................................ 58

*U.S. v. Freed*,
 921 F.3d 716 (7th Cir. 2019)........................................................ 39

*U.S. v. Olano*,
 507 U.S. 725 (1993) .................................................................... 39

*Walker v. Groot*,
 867 F.3d 799 (7th Cir. 2017)................................................... 35, 44

*Wharton v. Furrer*,
  620 F. App'x 546 (7th Cir. 2015) ........................................................... 35, 36

*Whitehead v. Bond*,
  680 F.3d 919 (7th Cir. 2012) ................................................................. 32

*Williams v. Boles*,
  841 F.2d 181 (7th Cir. 1988) ................................................................. 37

## Statutes

28 U.S.C. §1291 ........................................................................................ 1

28 U.S.C. §1331 ........................................................................................ 1

28 U.S.C. §1343 ........................................................................................ 1

Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. .......... *passim*

## Other Authorities

Cir. R. 28(b) ............................................................................................. 1

Fed. R. Civ. P. 51 ................................................................................ 34, 47

Fed. R. Civ. P. 51(b)(2) ........................................................................... 34

Fed. R. Civ. P. 51(c) ................................................................................ 34

Fed. R. Civ. P. 51(d)(1) ........................................................................... 34

Fed. R. Civ. P. 51(d)(2) ........................................................................... 35

Fed. R. Civ. P. 59 ................................................................................ 1, 28

Fed. R. Civ. P. 59(a) ................................................................................ 32

Fed. R. Civ. P. 60 ................................................................................ 1, 28

# JURISDICTIONAL STATEMENT

Plaintiff-appellant Karen Hirlston's jurisdictional statement is not complete and correct. Cir. R. 28(b).

Hirlston filed suit in the district court against defendant-appellee Costco Wholesale Corporation, which is incorporated and has it principal place of business in Washington state. District Court docket ("Dkt.") 1. The district court had federal question jurisdiction under 28 U.S.C. §§1331 and 1343 because Hirlston's complaint asserted claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. ("ADA").

On June 9, 2021, the jury returned a verdict in Costco's favor on Hirlston's ADA disparate treatment and accommodation claims. Dkt.177, 178. On August 19, 2021, the district court (Honorable Tanya Walton Pratt) found for Costco on Hirlston's remaining ADA retaliation claim and entered final judgment. Dkt.192, 193.

On September 16, 2021, Hirlston moved for a new trial, or in the alternative, for relief from judgment under Federal Rules of Civil Procedure 59 and 60. Dkt.197. On May 17, 2022, the district court denied Hirlston's motions. Dkt.205. On June 15, 2022, Hirlston filed her Notice of Appeal. Dkt.206. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the district court properly denied a new trial on Hirlston's ADA disparate treatment and failure-to-accommodate claims because Jury Instruction 19—to which Hirlston did not object despite ample opportunity—is not plainly erroneous and did not affect her substantial rights.

2.    Whether the district court properly denied a new trial because verdict form Question 1—to which Hirlston also did not object despite ample opportunity—is not plainly erroneous and did not affect her substantial rights.

3.    Whether the district court properly denied a new trial because the admission of two photographs depicting storage cubicles was neither an abuse of discretion nor prejudicial to Hirlston.

4.    Whether the district court properly denied a new bench trial on Hirlston's ADA retaliation claim because the ruling was not tainted by evidentiary or instructional error.

## STATEMENT OF THE CASE

### A.     The parties.

Costco operates membership-style retail warehouses. A-3, ¶¶17-18.[1]

Hirlston worked for Costco in Indianapolis from 2009 to 2019. A-3, ¶¶20-21;

A-174. As relevant here, Hirlston was promoted to Optical Manager in

August 2010, and remained in that role until she began a leave of absence in

November 2015. A-3, ¶¶20-21; A-866.

### B.     Hirlston's complaint.

On December 21, 2017, Hirlston filed suit against Costco, asserting two

claims. Count I alleged that Costco (a) failed to provide reasonable

accommodation, and (b) discriminated against her in violation of the ADA.

Count II alleged that Costco violated the ADA by retaliating against her for

her accommodation requests. A-10-12.

### C.     Pre-trial proceedings.

Non-expert discovery closed in March 2019. A-56. The district court

denied Costco's summary judgment motion in December 2019. A-57-81, 154-

68. Due to the COVID-19 pandemic, trial was continued several times, and

ultimately began on June 7, 2021. Short App. 43-53.

---

[1] Citations to the appellate record are as follows: "Short App." for Short Appendix;
"A" for Appellant's Appendix; and "SA" for Appellee's Supplemental Appendix.

In the interim, the district court ruled on motions *in limine* and held a Pretrial Conference. Short App. 49, Nos. 118-120; A-180 (order on motions *in limine*). As relevant here, Hirlston moved to exclude documents Costco did not produce during discovery. A-185-86. The district court ruled that, "[s]ince *both parties* agree to follow discovery rules and not use documents that should have been produced, Hirlston's Motion *in limine* is granted." *Id.* (emphasis added).

### D.   The trial.

Count I (failure to accommodate/disparate treatment) was tried to a jury. Count II (retaliation) was tried to the court. SA-6; Dkt. 136. The jury trial proceeded first, spanning June 7, 8, and 9, 2021. A-211, ¶1.

Hirlston called Julie Frazier (Manager, Leave and Accommodations Department), Michael Donaldson (General Manager, Castleton warehouse), Scott Francis (Midwest Regional Manager over Optical and Hearing Aid departments), William Kaufman (General Manager, South Indianapolis warehouse), Dr. Rachael Bowles (her doctor), and herself. SA-24, 81. Costco also called Kaufman during its case. SA-184.

### E.   Summary of trial evidence.

#### 1.   Hirlston starts as Optical Manager in 2010.

In December 2009, Costco hired Hirlston as an Optician. A-197, ¶1. In August 2010, Costco promoted her to Optical Department Manager at the

Castleton warehouse in Indianapolis. *Id.*, ¶2. In September 2014, Donaldson became General Manager of that warehouse. *Id.*, ¶3.

### (i)    The Optical Department.

Among other services, the Optical Department helps Costco members select eyeglass frames, fits and adjusts eyeglasses, and dispenses contact lenses. A-809; SA-99:11-14, 121:1-122:1. The layout of the Optical Department was shown to the jury via demonstrative exhibits, which are in the record at A-782-89; SA-118:2-126:9 (testimony describing layout).

During the relevant period, the department had one to three employees working at any given time. SA-85:16-23. Hirlston, as the manager, "[o]vers[aw] and direct[ed] operations for the optical department." A-809. She testified, "[i]t was a very busy department." SA-171:13-21.

### (ii)    The Optical Manager position.

As Hirlston admitted at trial, "as an optician, you don't sit most of the day. You're up and down, up and down constantly." SA-174:25-175:2. This is reflected in the Optical Manager's job description (or "Job Analysis"), which includes as "essential functions and tasks": "trains, and directs department personnel," "[p]rovides and ensures prompt and courteous member service," "[r]esponds to member concerns," and "[o]versees and participates in duties of Licensed Dispensing Opticians," including "[f]it[ting] and adjust[ing]

eyeglasses, dispens[ing] contacts," "[r]ing[ing] orders and collect[ing] payment when necessary." A-810.

Donaldson explained that Costco department managers are "working managers": "if you're the optical manager, you're the optician, you're the ones working hand in hand with the members. We don't have, like, a manager that sits and directs." SA-98:23-99:3. Consequently, Hirlston spent about 70 percent of her time assisting members. SA-39:17-18 (Frazier: "70 percent of her job as an optical manager is member-facing"); SA-99:1-3 (Donaldson: Optical Managers "spend probably 70 percent of [their] time working with the members."); SA-170:14-23 (Hirlston: 70% accurate).

Francis (Regional Manager) explained that member service expectations for Optical Department employees are "different" than the rest of the warehouse: "there's a one-on-one relationship that you build with the member," "having to interact with the members and find out what it is that they're in there for. What type of glasses are they looking for? What type of lifestyle and benefits are they hoping to get from their glasses?" SA-116:7-25, 117:3-6 (without this relationship, "I don't know what type of frame to help you pick out and provide.")

Member service includes showing members glasses on the "frame boards" (where frames are displayed throughout the department), retrieving contacts/glasses from cabinets below frame boards, fitting glasses, dispensing

contact lenses, and responding to member complaints. SA-64:5-10, 39, 53 (Frazier); SA-99:11-14 (Donaldson); SA-121:1-122:2 (Francis).

Optical Managers also must retrieve items from low storage areas: "A lot of the stuff is … in cubbies down below. … When you're getting glasses from below the boards, where they keep all the glasses, they have like backup storage down there, and often they have to kind of get down in there and dig around. And then, too, they have to put stuff in there." SA-62:14-25, 124:16-20 ("In those cubbies is where we would keep … the product that we're waiting for members to pick up.").

The position also requires lifting. Several times per week (sometimes daily), the Optical Department would receive deliveries of boxes (containing glasses and lenses), which were left on the display case. SA-73-74, 131:19-133:13, 160:6-20. Due to safety and theft concerns, and to ensure that members' view of the display case was unobstructed, department employees (including the Optical Manager) had to immediately remove the boxes—which could weigh between 5 and 10 pounds—from the display case (which was about four feet high) and set them down to unpack, sort, and place in cubbies. SA-73-74, 124:7-13, 131:19-134:18, 135:2-20, 142:8-11 (Kaufman: "you have stuff that's being delivered, you're putting it away. You're stooping down, bending down under the cabinets, under the desk. So it's definitely a position that you would be moving quite often.").

7

In addition, when assigned opening duties, the Optical Manager would have to "get the cash register" till (weighing five to ten pounds), take out trash, take returned/damaged merchandise to the appropriate department, then handle the initial arrival of members. SA-128:18-129:24 (Francis: "it's one individual that is opening up in the morning, and that person is running kind of from end to end of the department"); SA-131:7-16, 172:22-23 (Hirlston confirming she was "often the opener").

The Optical Manager also was in the rotation to perform closing duties, which included returning the cash register till, cleaning up and wiping down counters, and ensuring items were in the right place. SA-129:25-131:14.

Depending on staffing and the time of day, the Optical Manager could be the only one working in the department for several hours. SA-73-74, 86:24-87:5, 172:24-173:2. Even if another employee was also scheduled to work, the Optical Manager would need to work alone during that employee's legally mandated breaks. SA-73:22-74:74:2.

### 2. Costco's accommodation policies.

Costco's goal is to have employees remain in their job whenever possible. SA-29, 31-34, 45-51. When an employee has permanent work restrictions, Costco utilizes a Job Assessment Meeting process to assess whether it can accommodate the employee in their current position, such that they can perform essential job functions. SA-35-36, 45:6-22. Job Assessment

Meetings are conducted with the employee, the warehouse manager, and leave department members, and are facilitated by a neutral third party from Rehab West (Francis Parisi). SA-37:6-25, 154:9-12.

If Costco determines, based on the information obtained in this process, that it can accommodate an employee in the existing position, it implements the accommodations. SA-45:11-12. If it cannot, it considers other available positions the employee is qualified to perform. SA-45:13-14; A-946. The employee receives preference for those positions, so long as they are not promotions. SA-45:13-18. Permanent reassignments are paid at the rate of pay for the new position. A-946.

Only if Costco cannot accommodate the employee in either the current or an alternative position does it place the employee on leave, as a reasonable accommodation. SA-45:19-25. Costco's Personal Medical Leave ("CPML") policy provides leave for at least one year. A-976-77; SA-49:11-13. The leave provides "time to find a position in which [the employee] can perform the essential functions" and is "an opportunity for them to continue their employment with Costco while seeking to return to work." SA-41:18-42:2. Salaried employees on CPML are entitled to salary continuation for a period of time. A-983.

While employees are on leave, Costco sends job postings from warehouses the employees are interested in working, and invites them to

contact the company if there are positions they believe they can do with or
without accommodations. SA-46:1-8. Because it makes "every effort to try and
get [] employees back to work," Costco often extends the leave beyond one
year. SA-40:12-13, 49:13-20.

### 3. Hirlston initiates the job accommodation process in September 2015.

Hirlston has chronic health conditions, including fibromyalgia and
"multiple problems with [her] back." SA-146:23-149:23. She uses a cane when
walking, including at work. SA-149:2-11. Until 2015, Hirlston did not request
any workplace accommodation. SA-69:11-13, 150:5-9.

In May 2015, Costco announced an Optical Department remodel that
would build computer monitors into countertops to protect the confidentiality
of member health information. A-804. A May 13, 2015 memo to Optical
Managers explained: "Due to kiosk configuration, [protected health
information] can be viewed on our monitors from across the opposite side of
the department," and the "solution … is to build monitors directly into the
optical kiosk countertops." *Id.*; SA-115:5-15 (Francis: "for HIPAA purposes,"
"we were bringing all of the computers up into what we called a drop box,
where the computers would sit kind of into the counter").

While the remodel meant employees would stand while using
computers, it did not remove existing seats in the department. SA-93:2-11,

125:22-126:3, 175:6-176:21. Hirlston, however, was concerned the remodel might eliminate seated workstations, and contacted HR about possible accommodations. SA-70:7-11, 150:10-151:13, 181:4-10.[2]

HR advised Hirlston about Costco's accommodation process, including the need to have her doctor fill out a work restrictions form. SA-153:7-25. Hirlston gave the Optical Manager Job Analysis to Dr. Bowles, and asked her to complete a Work Restrictions form. SA-151:17-152:25. In September 2015, Hirlston submitted the completed form to Donaldson. SA-153:23-25.

The form stated that Hirlston had the following "[p]ermanent" work restrictions:

(1) "Never" bend, stoop, squat, or kneel;

(2) "Occasionally" lift five pounds, and no more than two pounds below the waist;

(3) Stand no more than "15 minutes at a time," and thereafter "sit frequently"; and

---

[2] Hirlston testified: "at the time the memo came out, we had one seated work station at each end of the Kiosk and then one computer up on the counter. This [remodel] would remove those computers at either end of the kiosk and just put everything up on that upper counter, so there would be no place to sit down and work on a computer." SA-151:7-13.

(4) Walk no more than "10 minutes at a time," and thereafter "sit frequently to relieve pain." A-807-08. Hirlston testified she agreed with these restrictions. SA-169:3-2.

The Job Analysis for the Optical Manager position, however, required Hirlston be able to do the following "[d]uring [e]ssential [f]unctions:"

(1) "Frequently"—meaning "2-1/2 to 5 hours"—carry up to ten pounds;

(2) "Frequently" stand;

(3) "Frequently" walk; and

(4) "Occasionally" ("under 2-1/2 hours") bend, squat, and kneel.

A-810.

### 4.    The November 2015 job accommodation meeting.

After receiving Hirlston's work restrictions, Hirlston participated in a Job Assessment Meeting on November 3, 2015 with Donaldson, Frazier, Davidson (Integrated Leave and Accommodation Specialist), and Parisi (Facilitator). SA-35:18-21, 37, 70:15-19, 154:6-18; A-861, 865 (Job Assessment Meeting memo).

During the meeting, Costco asked Hirlston to clarify what was meant by "will need to sit frequently to relieve pain," and whether she would need to sit immediately if she was in the middle of helping a member and started to feel pain. A-861. Hirlston responded this is "'sorta what she does now,'" but could "work around this" if the member interaction lasted less than 10-15

minutes. *Id.* Hirlston also noted "she sometimes cannot stand and needs to sit down immediately and sometimes she has a couple of minutes and then needs to sit down to release the pain." *Id.*

Hirlston also stated she had "worked around [her] restrictions for years," including by asking "someone from [the] photo [department] to help her" lift "if something was too heavy to lift." A-861 At trial, Hirlston admitted that she also had stopped bending and squatting at work when her condition "deteriorated." SA-162:11-25.

Hirlston suggested the following accommodations during the meeting: (1) using a "grabber" to pick up items, (2) having access to a sitting station, and (3) periodic lifting assistance from coworkers. A-861-64; SA-157:7-158:4, 159:4-19; SA-7 (Hirlston's proposed jury instruction tracking those proposals).

After comparing the essential functions in the Optical Manager Job Analysis with Hirlston's Work Restrictions Form, Costco determined Hirlston could not perform the essential functions of her job even with accommodations. A-861-64; SA-35:22-36:8, 42:6-21, 52:18-53:2, 63:3-64:17, 65:10-66:2; 86:24-87:5, 94:2-16, 156:4-20, 75:21-76:2 (Donaldson: "When you took all of her restrictions combined with the essential functions, we couldn't make enough reasonable accommodation[s] to make that happen.").

In particular, Costco determined it could not excuse lifting, an essential function. A-810. As reflected in the meeting notes: Costco "indicated that with Ms. Hirlston's lifting restrictions of 2 pounds and 5 pounds, anything over this would be excusing performing essential functions because she would not be able to team lift certain items and it would require other people to do the lifting for her." A-864.

Witnesses confirmed this at trial:

> "We couldn't guarantee lifting, because there could be two to two -- two to three hours, probably, where you might be alone on a slower day, so we couldn't guarantee that somebody would be there. When we get a doctor's note, we've got to go by it 100 percent. We can't say, 'Well, we don't have coverage so you're going to have to go outside your doctor's restrictions.'"

SA-86:24-87:5 (Donaldson); SA-76:13-18 (Donaldson: "doing work-arounds … isn't reasonable accommodations. Having other people lift for you -- especially in a department that's HIPAA certified, so you can't just bring any employee into that department"); SA-42:16-21(Frazier: "when we actually spoke to her about what she was doing, like, 'How are you lifting this,' we found out that she was having other employees do things for her. And it came to light that she was actually -- you know, in order to stay within her restrictions, it was impossible to perform the essential functions.").

Costco also determined Hirlston's 15-minute standing restriction (and the corresponding need to "sit frequently") would interfere with providing

14

member service—70% of the Optical Manager job. A-807-08; SA-39:17-18, 99:1-3, 170:14-23. As reflected in the meeting notes, "sometimes you can be solving a problem with a member for a very long time and could not step away and sit down or they are high maintenance members and leaving to sit down would not go over well." A-864.

Similarly, if Hirlston "was standing at the frame board and she was helping a member pick out frames" and "then that member left and now the next member comes up and they want help picking out frames, and she's not able to be there with them to do that [due to her restriction], then she needs to leave and walk away," and the member would "have to wait for the next person to be freed up to come and help them." SA-52:20-53:1; SA-136:2-6 (Francis: "I could be with a member at the frame boards for … ten minutes . . .or another member for 40 minutes depending on how many frames that they wanted to try on."); SA-142:1-7 (Kaufman: could be standing at the frame board with a member for "10, 15, 20, 40, 45 minutes").

Walking away from a member would be inconsistent with Costco's member service requirements. SA-77:6-10 (Donaldson: "We would never consider it reasonable to walk away from a member and go sit down when they might be on their lunch break trying to get their glasses, and all of a sudden, 'Well, I'm sorry, I've got to go sit down.' So then our member maybe

has to leave and come back again. That wouldn't be reasonable."); SA-39:13-18 (Frazier: same).

During the meeting, neither Hirlston nor Costco could identify an accommodation that would enable her to assist customers in interactions lasting longer than 15 minutes without violating her restrictions. A-864 (notes: "Ms. Hirlston indicated that if she is with a member longer than 15 minutes she does not know what to suggest that would be appropriate. … Costco indicated that they have no suggestions for modifications.").

Costco also had concerns that Hirlston would need to violate her doctor's restrictions to perform essential job functions. A-862 (Hirlston noting during meeting that "when helping a member she has not and would not need to sit"); A-864 ("Ms. Hirlston indicated that if she is with a member longer than 15 minutes, … she would continue until she is finished with the member."); A-861 ("Ms. Hirlston indicated that she has worked around the restrictions for years.").

As witnesses elaborated at trial:

> So, I mean, right there she's telling us she's not going to follow her doctor's orders…. She said it's not a huge issue, but it is a huge issue, because that's saying she's not going to follow her doctor's order. So, for Costco, that's a really big issue.

SA-88:20-89:3 (Donaldson); 87:2-7, 42, 43:9-10, 41:4-7, 55:16-20, 67:13-17 (Frazier: "we cannot allow employees to work beyond their restrictions.").

16

Hirlston herself testified:

> Q. And with the restrictions that you had from August of 2015, we agreed that you would need a sedentary position; correct?
>
> A. Yes.
>
> Q. And a manager level position like the optical manager level position is not a sedentary position, is it?
>
> A. No.

SA-178:18-23.

As a result, while Costco had indicated that Hirlston's suggestions of a "grabber" (to avoid bending/stooping/squatting) and a "drop-in box" for the computer (to allow sitting while on the computer) could be researched as accommodations for *some* functions, the lack of accommodations for *other* essential functions prevented Hirlston from performing the job. A-863; SA-38, 44:4-7 (Frazier: "there were other restrictions that precluded her from her job, so, again, like the grabber, it kind of became irrelevant based on the other restrictions"); SA-77 (Donaldson).

### 5. Costco places Hirlston on leave and she later accepts a Hearing Aid Attendant position.

Because Hirlston could not perform the essential functions of the Optical Manager position with accommodations, and because no other suitable positions were open, Costco placed her on leave, in accordance with its usual practice. A-866, 864; SA-96:23-97:1. Costco sent Hirlston job openings during her leave. A-869; SA-164:3-13, 177:3-16.

In April 2016, Costco held another Job Assessment Meeting to assess whether Hirlston could perform a Hearing Aid Attendant job, in which she had expressed interest. A-1076 (meeting memo); SA-56:10-16, 58:23-59:3. The meeting was suspended when Hirlston indicated she could do more than her current work restrictions indicated. SA-56-59. In September 2016, Hirlston submitted updated work restrictions: she could now "bend and stoop occasionally," but could walk "no more than 1 hour total" in an eight-hour shift and "need[ed] to sit the majority of her shift." A-871; SA-60:24-25, 108:25-109:8, 179:8-10.

Costco determined that, with her updated restrictions, Hirlston could perform the Hearing Aid Attendant position with accommodations. A-872-73; SA-61:17-20, 138:15-21, 140:24-141:5, 165:16-22, 180:3-6. On October 10, 2016, Costco offered Hirlston that role, which she accepted a week later. A-872; SA-179:11-20. She began work on October 31, 2016, and was paid at the highest rate for the position ($21.95/hour). A-197, ¶7; SA-142:23-143:1, 165:11-15.

### 6.    Hirlston continues working until an unrelated second leave of absence in September 2019.

In 2019, Costco promoted Hirlston to Hearing Aid Apprentice. SA-144:20-145:9. She continued in that role until she began an unrelated leave on September 24, 2019. SA-21.

### F.    Relevant trial proceedings.

The following events are relevant to Hirlston's claims of error.

### 1.    The district court permits both parties to introduce photographs taken after close of discovery.

On the second day of trial, during Donaldson's cross-examination, Hirlston's counsel sought to introduce three photographs (Exhibits 121-123) depicting the Optical Department at the Castleton warehouse from different angles. SA-90:2-92:20; A-1071-73 (Exs. 121-123). Hirlston had not identified these photos on her exhibit list or produced them during discovery. A-202-03; A-11; SA-1-6.

Costco objected to Exhibit 121 for lack of foundation. SA-90:9-15. The district court initially sustained the objection, but later admitted Exhibit 121. SA-90:19-91:18, 166:8-168:1. The court also admitted Exhibits 122 and 123 after Donaldson confirmed what was depicted. SA-91:21-92:20.

A short while later, during its direct examination of Donaldson, Costco introduced as demonstratives two photos of Optical Department storage cubbies (Exhibits 223, 224). SA-100:11-103:24; A-1083-84. Costco had given Hirlston the photos the previous day. SA-69:2-3.

Earlier that morning, Hirlston had objected that Costco had not timely disclosed the two photos in accordance with a district court order concerning demonstrative exhibits. SA-82:13-21; A-213 (the order). The district court

"overrule[d] [Hirlston's] objection on the timeliness," noting that its prior order was "just [for] demonstratives that would be used for opening statements." SA-83:13-84:20.

Then, during Donaldson's direct examination, Hirlston's counsel (Ms. Blevins) objected to the photos based solely on lack of foundation:

> MS. BLEVINS: Your Honor, there has been no representation about when these were taken and what period of time this relates to. …
>
> MS. FOLEY: Q. Mr. Donaldson, do you recall when these photographs were taken?
>
> A. I'm pretty sure like the end of last summer.
>
> THE COURT: The summer of 2020?
>
> MS. FOLEY: Yes, Your Honor.
>
> THE COURT: Do you object?
>
> MS. BLEVINS: Well, I object because I'm not sure that's what -- they said they've done a remodel of the optical department since Ms. Hirlston was there, so I do object if it's not the same. …
>
> MS. FOLEY: Q. Okay. So the cubbies in those pictures are the exact same as they were back in 2015?
>
> A. That would be my belief, yeah.
>
> MS. FOLEY: Your Honor, I move for the admission of Defendant's 223.
>
> THE COURT: Any objection?

MS. BLEVINS: I maintain the same objections that I had
earlier, that I have now, Your Honor.

SA-101:21-103:4. The district court overruled the objection. SA-103:5-22.

While the photos initially were introduced as demonstratives, Costco

(having laid the proper foundation and with the court's approval) moved to

admit the photos into evidence. *Id.*

Hirlston never objected to the photos on the grounds that they were not

produced in discovery or were initially intended as demonstratives. SA-

101:21-103:4.

### 2.    Discussions regarding "qualified" jury instruction.

Before trial, both parties submitted proposed instructions defining the

term "qualified" under the ADA. SA-7-9 (Proposed Final Instruction No. 23).

Hirlston proposed the following:

> Under the ADA, Ms. Hirlston was "qualified" if she had the
> skill, experience, education, and other requirements for the job
> and could do the job's essential functions, either with or
> without the accommodations **she proposed** of a grabber, a chair
> with a back, and periodic lifting assistance.

SA-7 (emphasis added).

Costco's proposed instruction, in contrast, did not include "she

proposed" language:

> Under the ADA, Ms. Hirlston was "qualified" if she had the
> skill, experience, education, and other requirements for the job
> and could do the job's essential functions, either with or
> without a reasonable accommodation.

21

SA-8.

On the last day of trial, the district court discussed the proposed instructions on the record. SA-185-213. Regarding the definition of "qualified" (proposed instruction No. 23), the court suggested modifying Costco's proposed instruction to add "she proposed at the November 15 job assessment meeting" at the end, which would bring it more in line with Hirlston's proposed instruction:

> The parties' 23 is modified. We're going to modify Defendant's, "Under the ADA, Ms. Hirlston was qualified if she had the skill, experience, education, and other requirements for the job and could do the job's essential functions either with or without," a reasonable accommodation -- "without the reasonable accommodations *she proposed at the November 2015 job assessment meeting*."

Vol. 3, p. 516:16-22 (emphasis added).

Hirlston's counsel responded, "we've reconsidered this overnight," and asked for the instruction "just to say, 'with or without a reasonable accommodation,' period, because that's what the law says, and leave out what she asked for is that meeting [sic], because I don't think that that's necessary." SA-189:23-190:2. Costco's counsel did not object to that proposal, "as that's how we originally proposed it." SA-190:2-4.

After the close of evidence, the district court emailed its proposed final jury instructions to the parties for their review. SA-215:15-18, 219:2-229:18 ("[O]ne lawyer review the instructions, one lawyer get ready for your closing

arguments; okay?"); A-744. The district court gave the parties 20 minutes. SA-218:23-219:2. The emailed instructions included Instruction 19, as it was subsequently read to the jury. A-744, 765.

Final Instruction 19 stated in relevant part:

> Under the ADA, Ms. Hirlston was "qualified" if she had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without the reasonable accommodation she proposed.

A-765.

After reconvening, the district court asked the parties if they had had a chance to "review the proposed final instructions in the final format?" SA-219:3-5. Hirlston's counsel, Ms. Maddox, told the court she was reviewing Instruction 19.[3] SA-219:6-14.

---

[3] Ms. Maddox may have misstated what instruction she was reviewing. Based on the following exchange, it is unclear if she was reviewing the instruction defining "qualified" (Final Instruction 19), or the instruction defining "accommodate" (Final Instruction 20/proposed Instruction 24):

MS. MADDOX: I am reviewing the ones that we just got as far as the former instruction number 24.

THE COURT: Which is 19?

MS. MADDOX: Yes.

THE COURT: Yes.

MS. MADDOX: I'm reviewing it now.

SA-219:3-14.

The district court then explained exactly what it had done regarding

Instruction 19:

> On 19, all the Court did was remove, "at the November 2015
> job assessment meeting," which you all agreed would be
> removed.

SA-219:17-19. The district court did not say it was removing the phrase "she

proposed." *Id.*

Hirlston's counsel, though she had reviewed the emailed instructions

and engaged in a lengthy colloquy with the district court regarding

modifications to other instructions, *never* objected to Final Instruction 19.

See generally SA-219-229; A-216.

### 3. Discussions regarding the special verdict form.

Before trial, the parties submitted proposed verdict forms. SA-11-20.

Costco's proposed Question 1 for both the failure-to-accommodate and

disparate treatment claims asked:

> Was Ms. Hirlston qualified to perform her job as an
> Optical Department Manager in November 2015?

SA-16. Hirlston's proposed verdict forms did not ask whether she was

"qualified," instead asking: "Has Ms. Hirlston proven by a preponderance of

the evidence that Costco failed to accommodate her disability under the

ADA?" SA-11.

On the last day of trial, the parties submitted revised proposed verdict

forms, which they discussed with the court after closing arguments. SA-213-

214, 217:9-11, 227:9-13, 237-247. The court noted that Costco's failure-to-accommodate verdict form "tracks the language of the elements," to which Hirlston's counsel responded: "I would like the language to track the Court's language in the instructions. I don't believe that [the form] lists everything." SA-237:17-19, 238:24-239:1.

When the district court asked, "What's not listed?," Ms. Blevins responded that she "d[id] not believe that the good faith effort should be in there," referring to a proposed question regarding a "good faith efforts" damages defense. SA-239:2-240:9. But she *did not object* to Costco's proposed Question 1, asking whether Hirlston was "qualified." *Id.*

The district court then turned to Hirlston's proposed verdict form on the failure-to-accommodate claim, which it noted was "just a really short version." SA-240:10-12. Costco objected to Hirlston's version, arguing that "it's more helpful to the jury to follow the instructions that have been given" and for the verdict form to "walk through the elements that are disputed in this case." SA-240:13-17.

Hirlston's counsel disagreed, insisting such detail was not "necessary" because "the Court has already given [the jury] those instructions, and they can follow them. And they're admonished to follow them." SA-240:18-23, 246:11-14.

The parties also extensively discussed the proposed verdict form for the disparate treatment claim. Hirlston's counsel *never* objected to Costco's proposed Question 1 on the disparate treatment verdict form. SA-241-247.

After further discussion, the district court gave the parties five minutes to agree on a verdict form, "[a]nd if not, I'll just use the one that I want to use; okay? So it's really to your benefit to work one out, that you guys can agree on." SA-247:7-10. As it later noted on the record, the parties were unable to agree on a verdict form, "so the Court did draft the verdict forms based on language proposed by both parties in their submissions and to track the elements." SA-248:14-18; A-216.

The district court's verdict forms adopted Costco's proposed forms, but with modifications that had been addressed in the parties' earlier colloquy with the court.[4] The court did not modify Costco's proposed Question 1, to

---

[4] Specifically, based on Hirlston's objection, the district court omitted language regarding a "good faith efforts" defense. A-250-53 (final verdict forms); SA-16-20 (Costco proposal). It also modified the failure-to-accommodate verdict form to omit reference to lost wages; modified Question 4, regarding emotional distress damages; and omitted reference to punitive damages, which Hirlston no longer sought. *Id.*

As to the disparate treatment verdict form, the court omitted reference to lost wages; modified Question 2 to ask, "Did Costco demote Ms. Hirlston on the basis of her disability"; and modified Question 4 to reference "demotion," instead of "reassignment." A-250-53; SA-16-20. These changes were discussed on the record. SA-237-247.

which Hirlston had not raised an objection. *Cf.* A-250-53 (final verdict forms) *with* SA-16-20 (Costco's proposed forms).

### G. The jury finds for Costco on the ADA accommodation and disparate treatment claims.

On June 9, 2021, the jury returned a verdict in Costco's favor. On the verdict forms for both the disparate treatment and failure-to-accommodate claims, it answered "No" to Question 1: "Was Ms. Hirlston qualified to perform her job as an Optical Department Manager in November 2015?" A-20, 252.

### H. The district court finds for Costco on the ADA retaliation claim.

The district court entertained briefing on the remaining ADA retaliation claim. A-217; Short App. 6. On August 19, 2021, it issued its findings of fact and conclusions of law. Short App. 6.

The district court found that, because "[t]he evidence shows that Hirlston was not qualified for the Optical Manager position, either with or without the reasonable accommodations she proposed," Costco's decision to place her on leave "represented an attempt to provide Hirlston additional time to return to work at the company," which "was not a materially adverse employment action." Short App. 14-15. For similar reasons, the court found Hirlston's "demotion" to Hearing Aid Attendant was not a materially adverse action. *Id.* at 17.

The district court also concluded there was no "causal link between [the alleged adverse actions] and her request for accommodations." *Id.* at 17. "It was Hirlston's inability to serve in this [Optical Manager] position in harmony with her work restrictions that caused any purported adverse action she faced," the court found, "not her exercise of a protected activity." *Id.* at 20.

On August 19, 2021, the district court entered judgment in Costco's favor. *Id.* at 23.

## I.    The order denying Hirlston's new trial motion.

On September 16, 2021, Hirlston filed her Rule 59 and Rule 60 motions on the four grounds discussed below. A-633. Costco opposed the motions (A-723), and Hirlston replied. A-790.

On May 17, 2022, the district court denied Hirlston's motions in a detailed, thirteen-page ruling, Short App. 25-37, finding (as relevant here) that she "failed to satisfy her heavy burden to obtain a new trial." *Id.* at 37.

"After again reviewing the trial record, the parties' proposed final jury instructions, the Final Jury Instructions given to the jury, and the verdict forms, and after fully considering the parties' arguments," the district court "agree[d] with Costco's position regarding [1] Final Jury Instruction No. 19, [2] the verdict forms, [3] the admission of Exhibits 223 and 224, and [4] the Court's Order on the ADA retaliation claim." *Id.* at 35.

1.    "Hirlston was given an opportunity to review and object to Final

Jury Instruction No. 19," the district court first found, with "the Court even explain[ing] the change that was made to the Instruction." Short App. 35. Still, the court noted, "Hirlston did not object," and in fact "initially proposed [the] instruction include[] the language 'she proposed'...." *Id.* at 35-36.

"[T]he phrase, 'she proposed,'" the court continued, "does not misstate the law about a reasonable accommodation." *Id.* at 36. The instruction also "was consistent with the evidence and could not have been prejudicial to Hirlston," the court found, because "the evidence at trial showed the parties had considered only accommodations proposed by Hirlston." *Id.*

2.      The district court found that "Hirlston did not object" to the court's suggested procedure for handling the verdict forms, and in fact "acknowledged during the trial [that] the verdict forms did not have to track everything on the jury instructions." Short App. at 36-37. The court went on to find "no error or misstatement of the law in the verdict forms," which "were consistent with the Seventh Circuit's pattern special verdict form for the qualification question" and contained "nothing confusing." *Id.*

3.      The district court "again determine[d]" that the photos of the storage cubbies "were appropriately admitted into evidence after Costco laid a sufficient foundation." Short App. 37.

4.      Finally, the district court found that Hirlston's derivative challenge to the ADA retaliation ruling was "without merit." Short App. 37.

## SUMMARY OF ARGUMENT

Hirlston contends the jury was incorrectly instructed on the meaning of the term "qualified" in both Instruction 19 and verdict form Question 1. She insists these purported errors are serious enough to warrant a new trial, yet she never even raised them below. Having never objected despite ample opportunity, Hirlston is entitled to—at most—plain error review. *See* Part (I)(A)-(B), Part II(A)-(B), below. Even so, Hirlston can demonstrate no error, let alone plain error, for several reasons.

*First*, that Instruction 19 told the jury to consider the accommodations "[Hirlston] proposed" did not render the instruction inaccurate or misleading. After all, as Hirlston repeatedly emphasized at trial, her proposed accommodations were the *only ones* the parties considered. Costco, having determined that no reasonable accommodation would permit Hirlston to perform the job's essential functions, proposed none (other than a leave of absence). Consequently, Instruction 19 accurately reflected the trial evidence. The instruction also reflected the law, having been modeled on the Seventh Circuit pattern instruction. *See* Part I(C).

But even if Instruction 19 was flawed, Hirlston makes no effort to show—as is her burden on plain error review—that mere inclusion of "she proposed" language affected her substantial rights or seriously affected the fairness of trial. *See* Part I(D).

30

*Second*, Hirlston demonstrates no error in the formulation of the verdict forms. The first question—simply asking whether Hirlston was "qualified" for her position—mirrors the Seventh Circuit pattern verdict form. While Hirlston insists that more definitional language was necessary, the jury instructions and counsel's arguments already told the jury exactly what "qualified" meant. She therefore cannot establish juror confusion or prejudicial error. *See* Part II(C)‑(D).

*Third*, Hirlston's challenge to the admission of two photos fares no better. She argues that allowing Costco to introduce photos it had not produced in discovery was an error so grave that it warrants a new trial, yet she never objected to the admission of the photos on that basis during trial. But even if she had, the district court did not abuse its discretion in admitting the photos—especially when it had just allowed Hirlston to introduce three photos *she* had never produced in discovery. *See* Part III(B).

Nor has Hirlston established that admitting two photos of storage cubbies likely changed the jury's verdict. The photos were merely cumulative of other evidence, including testimony describing the layout of the Optical Department. Further, the evidence showed that Hirlston was not "qualified" because she was unable to perform *other* essential functions having nothing to do with the storage cubbies. As such, the verdict for Costco would have been the same whether or not the photos had been admitted. *See* Part III(C).

Finally, Hirlston's challenge to the ADA retaliation ruling depends entirely on the asserted errors described above. Because she has established no error, judgment on the retaliation claim must be affirmed. *See* Part IV.

## STANDARD OF REVIEW

District courts have discretion to "grant a new trial on all or some of the issues" (Fed. R. Civ. P. 59(a)) if the verdict "is against the manifest weight of the evidence or if a prejudicial error occurred." *Romero v. Cincinnati Inc.*, 171 F.3d 1091, 1096 (7th Cir. 1999).

"A new trial should be granted, however, only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (quotations omitted). "Even if error was committed, no new trial is required if the error was harmless." *Romero,* 171 F.3d at 1096.

This Court "review[s] the trial court's decision not to order a new trial under the abuse of discretion standard." *Holmes v. Elgin, Joliet & E. Ry. Co.*, 18 F.3d 1393, 1396 (7th Cir. 1994). The standards governing specific issues raised in this appeal are described in the appropriate argument sections below.

# ARGUMENT

## I.    Hirlston is Not Entitled to a New Trial Because Instruction 19 Was Neither Plainly Erroneous Nor Prejudicial

The challenged instruction stated: "Under the ADA, Ms. Hirlston was 'qualified' if she ... could do the Job's essential functions, either with or without the reasonable accommodations she proposed." A-239. Hirlston demands a new trial because "[t]he additional language— 'she proposed'— was not agreed to by the parties and was a material, improper statement of the law." AOB-23. Critically, Hirlston has forfeited the argument by not raising it during trial. Additionally, the argument lacks merit for several independent reasons, detailed below.

### A.    Standard of review

The applicable standard of review depends on whether appellant timely objected to the jury instruction, and on whether she invited error.

Rule 51 requires "[a] party who objects to an instruction or the failure to give an instruction [to] do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. Proc. 51(d)(1). Such an objection "is timely if: (A) a party objects at the opportunity provided under Rule 51(b)(2);[5] or (B) a party was not informed of an instruction or

---

[5] Rule 51(b)(2) requires the district court to "give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered."

action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused." *Id.*, 51(c).

When objections are timely, "[g]enerally, [this Court] review[s] jury instructions to determine whether those instructions completely and accurately informed the jury of the relevant legal principles." *Ammons-Lewis v. Metro. Water Reclamation Dist.*, 488 F.3d 739, 751 (7th Cir. 2007). It will also "afford the district court substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 433 (7th Cir. 2009) (quotations omitted). "This inquiry is done by examining the instructions as a whole, in a common sense manner, avoiding nitpicking." *Id.*

Reversal is required "only if we are convinced that an inaccuracy or omission in the instructions' statement of the law misled or confused the jury to the prejudice of the appellant." *Ammons-Lewis*, 488 F.3d at 751; *Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002) (same).

But where the appellant "did not object below to the form or content of the relevant jury instructions," Rule 51(d)(2) only "allows for plain error review." *Ammons-Lewis*, 488 F.3d at 751. Plain error review is "quite limited" and "discretionary," *Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir.

2006), meaning that "reversal is not automatic; it is in the discretion of the reviewing court." *Mesman v. Crane Pro Servs.*, 512 F.3d 352, 357 (7th Cir. 2008) (quotations omitted).

"When [the Court's] review is for plain error, … the standard is obviously higher," *Ammons-Lewis*, 488 F.3d at 751, and "requires that '(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017) (quoting Fed. R. Civ. P. 51, 2003 note).

"When error is invited," however, "not even plain error permits reversal." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 609 (7th Cir. 2006). "A party cannot complain of errors which it committed, invited, induced the court to make, or to which it consented." *Wharton v. Furrer*, 620 F. App'x 546, 548 (7th Cir. 2015) (citing *Weise v. U.S.*, 724 F.2d 587, 590 (7th Cir. 1984)).

## B.    Hirlston never objected to—and in fact invited—the alleged error in Instruction 19

Whether or not Instruction 19 is accurate (though it certainly is), this Court must refuse Hirlston's demand for a new trial on two independent grounds: (a) Hirlston invited the alleged error, or (b) at the very least, she did not timely object.

(a)    This Court applies the invited error doctrine when "the error was invited through … a party's submission of proposed jury instructions." *Wharton*, 620 F. App'x at 548 (citing *U.S. v. Muskovsky*, 863 F.2d 1319, 1329 (7th Cir. 1988) (error invited where "Defendants submitted an instruction, parts of which were eventually incorporated into the instructions actually given, substantially similar to the instruction given by the district court")).

Here, Hirlston was the source of the "she proposed" language. Her proposed instruction stated she was "qualified" if she "could do the job's essential functions, either with or without the accommodations **she proposed** …." SA-7 (emphasis added). Costco's proposed instruction, in contrast, contained no "she proposed" language. SA-8.

So the fact that "she proposed" remained in Instruction 19 (even inadvertently) is the direct result of an alleged error that Hirlston invited. *Williams v. Boles*, 841 F.2d 181, 184 (7th Cir. 1988) ("in a civil case a litigant may not attack an instruction of which he was the proponent"). That alone disposes of her instructional challenge on appeal.

(b)    Independently, Hirlston does not dispute that she failed to timely object to Instruction 19 (AOB-23-27), but blames the district court. She claims she was "not alerted" to the form of Instruction 19 and thus "deprived of an opportunity to object." AOB-23, 26. The record prevents her from deflecting blame.

As detailed on pp. 22-25, the district court emailed the parties the final instructions and *specifically asked* counsel if they had had a chance to "review the proposed final instructions in the final format?" SA-219:3-5. Hirlston's counsel responded (apparently incorrectly) that she was reviewing Instruction 19. SA-219:6-14.

Thereafter, the court explained exactly what it had done with Instruction 19—a fact her opening brief omits: "*On 19, all the Court did was remove, 'at the November 2015 job assessment meeting,'* which you all agreed would be removed." SA-219:17-19 (emphasis added). The district court did not say it was removing "she proposed." *Id.* Thus, Hirlston's assertion that the district court failed to "alert" her to the change is meritless.

Then, having been given Instruction 19 to review and told about the modification, Hirlston did nothing. She made no objection to Instruction 19, suggested no further modifications, and made no request for more time to review the final instructions. See generally SA-219-229.

On this record, the district court correctly found in its order denying a new trial "that Hirlston was given an opportunity to review and object to Final Jury Instruction No. 19, and the Court even explained the change that was made to the Instruction, but Hirlston did not object." Short App. 35; *Lewis*, 590 F.3d at 435 (appellant "was orally made aware of all changes that were being made [to instructions] and could have promptly responded").

37

Hirlston errs in relying on *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 683 (7th Cir. 2006). AOB-27-28. There, the district court "initially agreed to give most of [appellant's] liability instruction … during the instructions conference" but "changed his mind" at "some point after the conference." *Id.* "*Without notifying the parties*, the judge returned to the bench and instructed the jury using different instructions…." *Id.* (emphasis added). In that circumstance, this Court held that the appellant "cannot be faulted for failing to lodge a specific objection when no notice of the court's action or opportunity to object was provided." *Id.* at 684.

Here, in contrast, the district court did precisely what *Schmitz* requires: it "inform[ed] the parties of its proposed instructions before closing arguments and provide[d] an opportunity to object on the record and outside the jury's presence before the jury retired for deliberations." *Id.* at 683.

Thus, even if the issue was not waived entirely due to invited error, Hirlston's failure to object permits at most only plain error review.

### C.    Instruction 19 was legally correct and not plainly erroneous

Plain error review is discretionary. Here, Hirlston has not shown that leaving in the "she proposed" language "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *U.S. v. Olano*, 507 U.S. 725, 732 (1993). Thus, this Court should not entertain Hirlston's challenge at all. But even if it did, no error occurred because Instruction 19 appropriately

tracked the pattern jury instructions and contained no confusing or misleading matter.

"In crafting jury instructions, … the district court is afforded substantial discretion, and [this Court] will reverse only if it failed to state the law completely and correctly and the error caused prejudice." *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 846 (7th Cir. 2014). "Plain error review of jury instructions is particularly light-handed." *Lewis*, 590 F.3d at 433 (quotations omitted).

"Pattern instructions are presumed to accurately state the law," *U.S. v. Freed*, 921 F.3d 716, 721 (7th Cir. 2019), "reflect the collective experience of the judges and lawyers who crafted them," and "serve as a helpful starting point." *U.S. v. Edwards*, 869 F.3d 490, 497 (7th Cir. 2017).

Here, Seventh Circuit Pattern Jury Instruction No. 4.05, on which both parties based their proposed jury instruction, states:

> 4.05. DEFINITION OF "QUALIFIED" Under the ADA, Plaintiff was "qualified" if he had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without **[describe requested accommodation]**. You should only consider Plaintiff's abilities at the time when [describe challenged employment decision].

*See* Federal Civil Jury Instructions of the Seventh Circuit, p. 104 (emphasis

added).[6] Thus, the Pattern Instruction contemplates a description of the

"*requested* accommodation"—that is, the accommodations the plaintiff

proposed. Consistent with the Pattern Instruction, Hirlston offered an

instruction stating: "accommodations **she proposed** of a grabber, a chair with

a back, and periodic lifting assistance." SA-7.

Against this backdrop, the district court did not err by including "she

proposed" in Instruction 19. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th

Cir. 2013) (plaintiff "bears the burden of establishing that she could perform

the essential functions of the position with or without reasonable

accommodation, and can't meet this burden if the only accommodations

*suggested* were unreasonable") (emphasis added).

Hirlston makes two arguments, both without merit.

*First*, she argues that *Carter v. Fam. Video Movie Club, Inc.*, 2013 WL

3989421 (S.D. Ind. Aug. 2, 2013) establishes instructional error. AOB-24, 30-

31. But *Carter* denied summary judgment on an ADA failure to hire claim

because there was "sufficient evidence that [plaintiff] is 'qualified' … and a

reasonable accommodation would enable him to perform all of the essential

---

[6] *See* www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf,
p. 104 (last visited 10/16/22).

functions of the position." *Id.* at *7. Because it involved summary judgment, *Carter* did not address how juries should be instructed. Nor did *Carter* turn on whether the plaintiff proposed viable accommodations. *Id.* (manager "herself testified that she believed [plaintiff] could perform the functions of the job with accommodation"). *Carter* does not assist Hirlston.

*Second*, Hirlston argues that the "she proposed" language "ignores the interactive process, which requires both parties to work together to determine whether a reasonable accommodation could be made." AOB-24, 31-32. She ignores, however, that the district court gave other instructions explaining that Costco, as much as Hirlston, had a role in the interactive process.

When determining whether "instructions completely and accurately informed the jury of the relevant legal principles," this Court must "examine the instructions as a whole rather than in isolation from one another." *Ammons-Lewis*, 488 F.3d at 751. Here, Instruction 20 told the jury that "Costco's duty to provide a reasonable accommodation is a continuing one." A-766. Instruction 21 further elaborated that "the *employer must discuss* with the employee … whether there is a reasonable accommodation that will allow

her to perform the job. Both *the employer* and the employee *must cooperate* in this interactive process in good faith." A-767 (emphasis added).[7]

And Instruction 17 (reciting the elements of the failure-to-accommodate claim) explained that liability depended on whether "[a] reasonable accommodation *existed* that would have allowed Ms. Hirlston to perform the essential functions of her job"—not on whether *Hirlston* proposed one. A-763, ¶(5) (emphasis added).

As a result, the jury was well aware that "it was not solely up to Hirlston" (AOB-25) to propose accommodations. The instructions accurately informed the jury of Costco's duty to reasonably accommodate and to participate in the interactive process. Short App. 36. Merely including "she proposed" language in Instruction 19 would not have misled or confused the jury into thinking that the obligation lay solely with Hirlston.

Nor could the jury have been misled or confused, as Instruction 19 conformed precisely to the evidence. "District judges craft jury instructions to fit the particular trial, focusing the jurors' attention on what is disputed, without burdening them with detailed explanations of undisputed legal points." *Haynes v. U.S.*, 936 F.3d 683, 694 (7th Cir. 2019).

---

[7] Instruction 21 was modeled on Hirlston's proposed instruction, minus the reference to punitive damages. *Compare* SA-10 *with* A-767.

Here, Hirlston repeatedly emphasized that Costco did not propose any accommodations during the Job Assessment Meeting:

> Q. So during this November 3rd, 2015, meeting, did Costco offer any accommodations?
>
> A. No. They didn't have any suggestions at all.

SA-163:4-6; SA-28:23-24, 232:14-17, 234:4-8, 235:4-6, 236:4-5, 236:14-16.[8] Her counsel's opening statement told the jury: "This case is simple. The Castleton Costco refused to provide [Hirlston] … with very reasonable accommodations [listing accommodations Hirlston proposed]," and "Costco offered no suggestions for accommodations." SA-27-11:16, 28:23-24.

Again in closing, Hirlston' counsel emphasized that Costco "should have considered the accommodations Ms. Hirlston suggested to see if she could do the job with those accommodations." SA-232:1-13. She also reiterated throughout closing that Costco did not propose accommodations. SA-234:4-8 (Costco "did not investigate any possible accommodations"); 235:4-6 (Costco "was supposed to suggest other accommodations if it felt the ones Ms. Hirlston requested would not work"); 236:4-5 (Donaldson "did not investigate or offer any recommendations for accommodations"); 236:15-16 (Frazier "did not recommend any accommodations").

---

[8] That is because, as detailed above, Costco determined no reasonable accommodations would permit Hirlston to perform certain essential functions. A-863, 866; SA-38, 43-44, 77.

Based on the above, an instruction directing the jury to consider the accommodations *Hirlston* proposed was eminently appropriate and could not have confused or misled jurors in any way. For similar reasons, as explained next, Instruction 19 was not prejudicial.

### D.    Hirlston fails to establish that Instruction 19 was prejudicial

"If jury instructions contain incorrect or confusing legal statements, this court considers whether a party was prejudiced by the instruction." *Schobert*, 304 F.3d at 732 (though "instructions were not as clear as they should have been and at times were incorrect, [plaintiffs] have not shown that they were prejudiced").

Even more, when reviewing for plain error, the challenged instruction must have "affect[ed] substantial rights" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Walker*, 867 F.3d at 803. Here, Hirlston makes no affirmative demonstration of prejudice—she simply assumes that it follows from the alleged error. AOB-24-26. That failure alone compels affirmance of the order.

Nor can Hirlston establish prejudice. As noted, Hirlston testified without equivocation that Costco proposed *no* accommodations. *See also* AOB-14 ("Costco did not offer any potential reasonable accommodations."). Therefore, adding the phrase "she proposed" to the instruction did not alter the universe of accommodations the jury considered.

44

Stated differently, the verdict would not have differed if the "she proposed" language was absent—either way, the jury would have considered the same group of accommodations that *only* Hirlston had proposed (lifting assistance, a grabber, a seated workstation). The district court agreed. Short App. 36 (instruction "could not have been prejudicial to Hirlston because the evidence at trial showed the parties had considered only accommodations proposed by Hirlston").

This Court therefore cannot conclude that, "view[ing] the evidence as a whole," the jury "could have reached a different outcome" (*Kuberski v. Rev Recreation Grp., Inc.*, 5 F.4th 775, 780 (7th Cir. 2021)) had the "she proposed" phrase been deleted from Instruction 19. *Lewis*, 590 F.3d at 434 (inadvertent inclusion of "also" did not "ma[k]e the instructions so confusing and misleading that it resulted in the jury being conveyed an incorrect message").

Finally, even accepting Hirlston's claim that the instruction misstated Costco's obligations in the interactive process, any confusion was ultimately harmless. That is because even if Hirlston proved that Costco failed to engage in the interactive process—a contention belied by the record—that is not sufficient to recover under the ADA. Hirlston "must also show that [Costco's] 'failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation.'" *Sanford v. Thor Indus., Inc.*, 286 F. Supp. 3d 938, 945 (N.D. Ind. 2018) (quoting *Rehling v. City of Chi.*, 207 F.3d 1009,

45

1016 (7th Cir. 2000)). Hirlston makes no such showing here. *See* Part III, below. Because no reasonable accommodation existed that would have enabled Hirlston to serve as the Optical Manager, the ADA claim would fail irrespective of Costco's role in the interactive process.

For each of these independent reasons, Hirlston's instructional challenge does not warrant a new trial.

## II.   Hirlston is Not Entitled to a New Trial Because the Special Verdict Form Was Neither Plainly Erroneous Nor Prejudicial

The verdict forms properly tracked the elements of the disparate treatment and failure-to-accommodate claims. A-250, 252. Question 1 on both forms asked: "Was Ms. Hirlston qualified to perform her job as an Optical Department Manager in November 2015?" A-250, 252. Hirlston argues the forms should have said "Was Ms. Hirlston qualified … *either with or without reasonable accommodations*?" (emphasis added). AOB-30. Hirlston failed to preserve this argument, and establishes no reversible error.

### A.   Standard of review

"The best verdict form for a given case is a question left to the broad discretion of the district court and is informed by the unique facts, legal issues, and other circumstances presented." *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1090 n.2 (7th Cir. 2019). Consequently, this Court "review[s] a district court's formulation of questions on a special verdict form

for an abuse of discretion." *Malone v. Reliastar Life Ins. Co.*, 558 F.3d 683, 692 (7th Cir. 2009).

"Generally, special verdict questions must accurately present the issues in the case so as not to confuse or mislead the jury." *U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*, 852 F.2d 313, 316 (7th Cir. 1988). But the failure to timely object to a proposed verdict form permits—at most—plain error review. *Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*, 593 F.3d 95, 102 (1st Cir. 2010) ("Because [appellant] failed to object to the verdict form below, our review is for plain error."); *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999); *McGuire v. Davidson Mfg. Corp.*, 398 F.3d 1005, 1010 (8th Cir. 2005) (same).[9]

### B.     Hirlston never objected to Question 1

Hirlston asserts she "was not given an opportunity to object" to verdict form Question 1, suggesting the district court gave it to the jury without ever informing the parties. AOB-29. The record shows otherwise.

---

[9] Costco has not located precedent from this Court applying plain error review to a civil verdict form. Before the 2003 amendments to Rule 51 which allowed plain error review of *jury instructions*, this Court treated the failure to object to a verdict form as an appellate waiver. *Matter of Innovative Const. Sys., Inc.*, 793 F.2d 875, 882 (7th Cir. 1986). Should this Court follow other Circuits, it should find no plain error here. If this Court continues to adhere to its waiver rule, it should hold Hirlston's failure to object constitutes waiver.

As detailed above, each side submitted proposed verdict forms. SA-11-20. Costco's proposed Question 1 became the question that Hirlston now challenges. SA-16. After closing arguments, the parties discussed the verdict forms with the district court. SA-237-247.

When the district court expressed a preference for Costco's form on the failure-to-accommodate claim because it "tracks … the elements," Hirlston's counsel said, "I would like the language to track the Court's language in the instructions. I don't believe that it lists everything." SA-237:17-19, 238:24-239:1. But when the court asked what was missing, counsel addressed only Costco's good faith defense. SA-239:2-240:9.

Hirlston did *not* object to Costco's proposed Question 1, let alone assert it should have included the phrase "with or without reasonable accommodation." *Id.* Likewise, she never objected to Costco's proposed disparate treatment verdict form—which contained the identical question . SA-241-247.

And, when discussion turned to Hirlston's proposed forms, Hirlston did an about-face on the need for verdict forms to incorporate jury instructions:

> [S]ince the Court already gave the jury the instructions and they have them in there, *I don't think that it's necessary* for them to have them when filling out a verdict form, because the *Court has already given them those instructions*, and *they can follow them*. And *they're admonished to follow them*.

SA-240:18-23 (emphasis added); 246:11-14 ("I still maintain that our verdict forms are superior, because they're less confusing, and *[the jury] can follow the Court instructions*.") (emphasis added). Thus, Hirlston's position below contradicts her position on appeal.

After an extensive colloquy on the record, the district court gave the parties additional time to agree on verdict forms, but advised it would use its own forms if the parties failed to agree. SA-247:7-10. As the new trial ruling notes, "Hirlston did not object to the [district court's] suggested procedure." Short App. 36.[10]

Ultimately, the district court prepared verdict forms "based on language proposed by both parties in their submissions and to track the elements." SA-248:14-18; A-216. All of the district court's modifications had specifically been addressed with the parties in the earlier colloquy. *See* fn. 4, supra. Relevant here, the district court gave without modification Costco's proposed Question 1—to which Hirlston never objected despite ample opportunity.

On this record, Hirlston's assertion that she lacked opportunity to object is meritless. She not only failed to preserve her present objection (that

---

[10] Nor did Hirlston ask for a copy of the verdict forms that went to the jury; nor did she object during deliberations to not having received a copy; nor did she object to the forms after the jury returned its verdict.

Question 1 should have said "with or without reasonable accommodation" to mirror the jury instruction), she urged the district court *not* to incorporate jury instructions into the verdict form. SA-240:18-23, 246:11-14.

As a result, Hirlston has waived her appellate challenge. *Robinson v. Perales*, 894 F.3d 818, 827 (7th Cir. 2018) (contention that "special verdict forms were vague and improperly suggestive" "waived" because appellant "did not raise this objection on the record"); *MMG Financial Corp. v. Midwest Amusements Park,* 630 F.3d 651, 659 (7th Cir. 2011) (waiver where appellant "did not object to the special verdict form on these grounds").

But even if not waived entirely, Hirlston's argument does not survive plain error review.

### C.     The special verdict question was not plainly erroneous

Question 1 accurately presented the threshold element of both the disparate treatment and failure-to-accommodate claims—namely, whether Hirlston was qualified for the Optical Manager job. *U.S. Fire Ins. Co.*, 852 F.2d at 316. Indeed, Question 1 tracks the Seventh Circuit Pattern Instruction Special Verdict Form, which simply asks: "Was Plaintiff qualified to perform [his job] [the job sought]?" Seventh Circuit Pattern Instruction 4.15 ("Special Verdict Form"), p. 119.[11] The district court did not abuse its

---

[11] *See* https://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf (last accessed 10/18/22).

discretion by selecting a pattern verdict question that neatly fits this case.

Notably absent from the Pattern Verdict Form is the phrase "with or without reasonable accommodation," *id.*, which Hirlston now says was necessary to avoid misleading or confusing the jury. AOB-30, 32-33. But, as the district court properly found, there was "nothing confusing" about Question 1. Short App. 37.

"In determining whether the verdict form is confusing, we must consider it in light of the instructions given." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 827 (7th Cir. 2010). Here, Instruction 17 already explained that, to prevail on her failure-to-accommodate claim, Hirlston had to prove (among other elements) that she "was qualified to perform her job as an Optical Manager." A-763. Instruction 19 then specifically (and correctly, *see* Part I) defined "qualified" to mean that Hirlston "could do the job's essential functions, either with or without the reasonable accommodations she proposed." A-765. Next, Instruction 22 told the jury that, to prevail on her disparate treatment claim, Hirlston had to prove (among other things) that she "was *'qualified' (as defined in a previous instruction)* to perform her position as an Optical Department Manager." A-768 (emphasis added).[12]

---

[12] Instructions 17 and 22 tracked Seventh Circuit ADA Pattern Jury Instructions 4.02 and 4.03, pp. 94, 97, available at www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf (last accessed 10/18/22).

51

Taken together, the instructions told the jury exactly what it meant when the verdict form asked whether Hirlston was "qualified." As Hirlston herself told the district court, the jury "c[ould] follow" the instructions and "they[] [were] admonished to follow them." SA-240:18-23. The absence of redundant "with or without reasonable accommodation" language did not render the form inaccurate or misleading. *EEOC v. Mgmt. Hosp. of Racine*, 666 F.3d 422, 440 (7th Cir. 2012) (verdict form not confusing in light of instructions); *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 701 (7th Cir. 2007) ("Although the first question could have presented the plaintiffs' theory of the case more specifically …, the jury instructions covered that ground.").

The only authority Hirlston cites to support her position, *Mlsna v. Union Pacific Railroad Co.*, 975 F.3d 629, 633 (7th Cir. 2020), does not even involve a jury trial. *Mlsna* is a summary judgment case that notes that one element of an ADA claim is that the plaintiff must be "a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position." *Id.* at 633. That is true.

But *Mlsna* does not hold (nor does any other authority) that failing to include "with or without reasonable accommodation" language in verdict

52

forms is prejudicial error. The lack of such authority is not surprising, since the Seventh Circuit pattern special verdict forms contain no such language.[13]

### D.   Hirlston fails to establish that Question 1 was prejudicial

Hirlston has the burden to show that the alleged error in the verdict form was "significant enough to affect [her] substantial rights or to likely change the trial's outcome." *Lewis*, 590 F.3d at 435. She makes no effort to do so, again presuming that prejudice follows automatically from the asserted error. AOB-33. Her cursory treatment waives the issue on appeal. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002).

Nor is there any indication that the jury was so confused or misled that it affected the trial's outcome. As discussed, the instructions explained that "qualified" meant performing essential functions with or without reasonable accommodations. *See* sub-part (C). Counsel's arguments to the jury underscored this point. Hirlston's closing said: "The next point that we have to prove is, was Ms. Hirlston otherwise qualified to have performed the

---

[13] Hirlston's other cited authority (AOB-33), *G&G Closed Cir. Events v. Castillo*, 2019 WL 3554228 (N.D. Ill. Aug. 5, 2019), helps Costco. *G&G refused* to grant a new trial over a defense objection that the jury instructions and verdict form should have included certain legal jargon. *G&G* held that, "[b]y taking the question out of legalese, the Court adhered to the Seventh's Circuit guidance" that judges should frame instructions "in simple, everyday, nonlegalistic language.'" *Id.* at *6 (quoting *Native American Arts, Inc. v. Waldron Corp.*, 399 F.3d 871, 875 (7th Cir. 2005)).

essential functions of the job *with or without reasonable accommodations*[.]" SA-230:21-231:2 (emphasis added).

Then Costco addressed in closing "[w]hether Ms. Hirlston was qualified to perform her position as the optical department manager. The key question here is whether Ms. Hirlston could perform the essential functions of her job, *either with or without a reasonable accommodation*. The answer to that question must be, she was not. And if you agree, then, when you're asked to complete the jury verdict form on this question, we ask that you return a verdict for Costco." SA-233:13-20 (emphasis added).

Thereafter, the jury asked no questions and sought no clarifications during deliberations, which lasted just over two hours. Vol. 3, 661:5. The verdict was unanimous. SA-249-250:13. That verdict, as detailed in Part III below, was supported by overwhelming evidence that Hirlston was not qualified for the Optical Manager position (with or without reasonable accommodation). As such, this Court cannot conclude that any error in Question 1's phrasing likely would have changed the outcome at trial.

For each of these independent reasons, Hirlston's challenge to Question 1 does not warrant a new trial.

## III.  The Admission of Two Photos of Storage Cubbies Was Neither an Abuse of Discretion Nor Prejudicial

Hirlston contends that the admission of photos of storage cubbies—just two of the many exhibits introduced over a three-day trial—was erroneous and so prejudicial that it affected the outcome of trial. Her objection is unfounded and, frankly, ironic given that Hirlston *also* introduced three Optical Department photos during trial that were neither included on her exhibit list nor produced in discovery.

### A.  Standard of review

"Absent manifest abuse, a district court has and must have wide discretion over the scheduling and administration of a trial." *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1050 (7th Cir. 2000). As a result, this Court "give[s] the trial court's evidentiary rulings special deference and will overrule them only for an abuse of discretion." *Id.* at 1048.

But the Court "do[es] not alter a district court's judgment every time [it] conclude[s] there is an abuse of discretion in the admission of evidence." *Hasham*, 200 F.3d at 1048. Rather, a new trial is warranted "only … if the improperly admitted evidence had 'a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *Shick v. Illinois Dep't of Hum. Servs.*, 307 F.3d 605, 611 (7th Cir. 2002) (quotations omitted). "[E]videntiary errors satisfy this standard only if a *significant chance* exists

that they affected the outcome of the trial." *Hasham*, 200 F.3d at 1048
(emphasis added).

In short, a "new trial may be granted [for] error in the admission of
evidence" only in "extraordinary situations." *Shick*, 307 F.3d at 611.

**B.    The district court was within its discretion to admit the photos.**

The two photos depict cubbies where glasses and contact lenses were
stored in the Castleton Optical Department. A-1083-84. One photo had a tape
measure in front of the cubbies to show their height relative to the ground
and the rough dimensions of an individual cubby. A-1083. As detailed above,
Costco initially intended to introduce the photos as demonstratives, but
ultimately sought their admission after laying a proper foundation. SA-
100:11-103:24. Hirlston argues that the district court erred in admitting the
photos on three grounds, one of which she never raised below.

(a)    Hirlston argues that the photos were "well past due" based on the
district court's deadline for the exchange of demonstrative exhibits. AOB-34.
Hirlston fails to disclose, however, that the district court found she
misinterpreted that deadline. When Hirlston objected that the photos should
have been disclosed by Friday, June 4, the court overruled the objection,
specifically noting that "[t]he order …for the Friday filing were *just
demonstratives that would be used for opening statements*, so I won't exclude
them for being untimely." SA-82:13-84:17-20 (emphasis added).

56

Hirlston gives this Court no basis to second-guess the district court's interpretation and enforcement of its own trial management ruling.

(b)     Hirlston argues that the district court should have sustained her objection that the photos lacked foundation. AOB-36-37. When Costco sought to introduce the photos during its examination of Donaldson, Hirlston objected that Costco hadn't established "when these were taken and what period of time this relates to," and because Costco "said [it had] done a remodel of the optical department since Ms. Hirlston was there." SA-101:19-102:14. In response, Donaldson testified that he was present when the photos were taken at "the end of last summer" (summer 2020), and the cubbies in the photos were the same as they were in 2015. SA-101:5-103:6, 104:14-17. With that foundation, admission of the photos was not an abuse of discretion.

Hirlston now complains Donaldson's testimony did not definitively establish when the photos were taken, but, as her brief admits, an invoice visible in one photo bears out his testimony. AOB-34 n.2 (noting a "9/30/20" invoice). As such, any alleged error in establishing timing was harmless.

Hirlston similarly complains that Donaldson's testimony that the cubby layout hadn't changed was "equivocal," and "it was too late for [her] to … confirm or dispute [his] testimony." AOB-37. But Donaldson's testimony was unequivocal: "Q. Mr. Donaldson, did the cubby area of the optical department change after the kiosk computer remodel? A. No." SA-102:17-19. And it was

not "too late": her counsel could have asked Donaldson about it during re-cross, or elicited testimony about any changes to the cubby layout from Kaufman, Francis, and *Hirlston herself*—all of whom testified *after* Donaldson. SA-81, 110-114. She failed to do so. Because there was no evidence the photos did not accurately depict the cubbies during Hirlston's tenure, any alleged equivocation in Donaldson's testimony was harmless.

(c)    Hirlston contends the photos should have been excluded because Costco did not produce them during discovery. AOB-35-36. The contention is waived. "The Federal Rules of Evidence require a litigant to make a timely and specific objection when evidence is admitted." *Prymer v. Ogden*, 29 F.3d 1208, 1213-14 (7th Cir. 1994) (citing Fed. R. Evid. 103.3). "[A] specific objection made on the wrong grounds and overruled precludes a party from raising a specific objection on other, tenable grounds on appeal." *Id.*; *U.S. v. Field*, 875 F.2d 130, 134 (7th Cir. 1989) ("Neither a general objection to the evidence nor a specific objection on other grounds will preserve the issue on review.").

Here, Hirlston never objected that the photos were inadmissible because they were not produced in discovery. She objected solely on the two grounds discussed above. Under *Prymer*, those unrelated objections did not preserve her new objection on appeal. 29 F.3d at 1214 ("Because [appellant's]

counsel failed to object to the evidence on the ground he now sets forth, this argument has been waived.").

But even if not waived entirely, Hirlston's new objection at most warrants plain error review. *Prymer*, 29 F.3d at 1214. Yet she makes no effort to establish "(1) that exceptional circumstances exist, (2) that substantial rights are affected, and (3) that a miscarriage of justice will result." *Id.* at 1214. Nor could she. The fact that Costco did not produce the photos in discovery is easily explained: they were taken at the request of counsel, in preparation for trial, and then used to create the demonstrative exhibit of the Optical Department that is in the record at A-782-89.[14]

The district court was within its discretion to admit the photos, though they had originally been intended as demonstratives, after Costco addressed Hirlston's sole objection based on lack of foundation. *U.S. v. Andrus*, 775 F.2d 825, 849 (7th Cir. 1985) (admission of unproduced evidence not an abuse of discretion); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (same).

---

[14] Hirlston states she only "received these photographs during trial—after Donaldson's testimony had already begun." AOB-37. Not so. Costco had shared the demonstrative exhibit, which included one of the photos, with Hirlston on June 4, 2022, before the first day of trial. SA-83:7-12. Costco also shared both photos with Hirlston the night before Donaldson's testimony. SA-69:2-3, 82:13-16. In contrast, as Costco will explain, Hirlston *never* shared her unproduced photos with Costco until she sought to admit them through a testifying witness during trial. SA-90:2-92:20.

Hirlston also cannot plausibly claim an abuse of discretion when the district court previously permitted her to do the very *same thing* on the very *same day*—namely, introduce into evidence Optical Department photos that she had never produced in discovery or identified on her exhibit list. A-202-03; A-11; SA-1-6.

As detailed on pp. 19-21 (but notably omitted from Hirlston's opening brief), Hirlston sought to introduce three photos of the Optical Department during her cross-examination of Donaldson—which took place *before* Costco's photos were admitted. SA-90:2-92:20; A-1071-73 (Exs. 121-123). Like Costco, Hirlston laid foundation for her photos through Donaldson's testimony. SA-90:19-91:18, 91:21-92:20, 166:8-168:1. But unlike Costco, Hirlston never provided copies of the photos to the other side before seeking to admit them at trial. The district court nevertheless admitted Hirlston's photos. SA-91:21-92:20, 166:8-168:1.

Hirlston cannot credibly criticize Costco for later doing the same thing she did, nor claim that the district court abused its discretion by treating both side's photographic evidence the same way. Her challenge to the district court's ruling must be dismissed out of hand.

## C.    Admission of the photos was not prejudicial.

Hirlston must establish a "significant chance" that the admission of two storage cubby photos "affected the outcome of the trial." *Hasham*, 200 F.3d at

1048. On this record—where the photos were (a) cumulative and (b) relevant to only one of several essential functions that Hirlston was unable to perform—she falls far short.

(a)     "As a general rule, errors in admitting evidence that is merely cumulative of properly admitted evidence are harmless." *Jordan v. Binns*, 712 F.3d 1123, 1138 (7th Cir. 2013) (collecting cases). Here, the photos only provided a visual representation of what was already in the record.

On the first day of trial, before admission of the photos, Donaldson testified extensively about the location of the storage cubbies, how low they were to the ground, and how difficult it would be for anyone to reach into them without bending or squatting, even if using a grabber. SA-71, 78 (cubbies "start at six inches above the ground and go up to probably five to eight cubicles and then about five wide," and "I didn't see any way you could [retrieve items] without bending forward."); SA-62:19-20 (Frazier: "A lot of the stuff is in drawers down below, in cubbies down below.").

Donaldson also testified that he tried to reach into the cubbies using a grabber and found it difficult, even being able to bend without limitations. SA-72 ("[H]ow are you going to get down in those cubicles without bending and looking into them?"). On the second day of trial, Donaldson reiterated that the cubbies were as low as "[f]ive to six inches" from the ground and a

"tight space," such that using a grabber would be "even more difficult without being able to bend down and get down in there." SA-104:25-106:1.

Francis confirmed the cubbies were low to the ground, "[s]o, to get down and get your glasses, I'm going to have to bend down, grab the glasses out of the cubby." SA-137:7-9. Additionally, the jury saw a demonstrative of the Optical Department layout, which provided a visual depiction of the size and placement of the cubbies. A-782-89; SA-118:2-126:9 (testimony describing department layout).

Because the jury considered other evidence addressing the very same thing the two photos depicted, the photos were at best cumulative. Consequently, there is no chance—let alone a significant chance—the photos changed the trial's outcome.

(b)     The evidence overwhelmingly established that, whether or not Hirlston could access the cubbies using a grabber, she could not perform *other* essential functions with or without reasonable accommodations (*e.g.*, standing, walking, lifting). Thus, had the jury never seen the cubby photos, it is inconceivable it would have found Hirlston "qualified" for the Optical Manager position.

To begin, Hirlston's restrictions were extensive. As Donaldson explained, "[i]f she cannot stand for more than 15 minutes, if she cannot walk for more than 10 minutes, if she could never, never, never bend, stoop, or

squat. They're pretty significant. We're not just talking one restriction. There's -- I believe that's five different restrictions." SA-78:12-16; A-807-08 (Work Restriction Form).

Those restrictions were incompatible with her job. As Hirlston confirmed, she "need[ed] a sedentary position," while "the optical manager level position [was] not a sedentary position." SA-178:18-23. She admitted that "as an optician, you don't sit most of the day. You're up and down, up and down constantly." SA-174:25-175:2.

The jury heard voluminous evidence that no reasonable accommodations existed that would have allowed Hirlston to perform several essential functions with her restrictions. For example, Hirlston's lifting restrictions meant she could not handle tasks that were a central part of the job, including lifting boxes that were delivered almost daily and had to be removed from the counter, and retrieving/returning the cash register till and taking out trash during opening and closing duties. SA-73-74, 128:18-129:24, 131:7-134:18; 135:2-20, 142:8-11, 160:6-20, 172:22-23; A-810.

Costco representatives testified—and Hirlston confirmed during the Job Assessment Meeting—that the only "work around" would have been to shift those essential functions to other people. A-861, 864; SA-42:16-21 (Frazier ); SA-76:13-18, 86-87 (Donaldson). But as this Court has "repeatedly held," "to have another employee perform a position's essential function, and

to a certain extent perform the job for the employee, is not a reasonable accommodation." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 289 (7th Cir. 2015)

Nor was that solution feasible: the Optical Manager often worked alone for part of the shift, and Costco could not have non-HIPAA certified employees from other departments assist. SA-73-74, 76:13-18, 86-87, 172:24-173:2.

Hirlston's 15-minute standing restriction also prevented her from meeting the job's member service expectations—another essential function, which occupied about 70% of Hirlston's time.[15] A-810; SA-39:17-18, 99:1-3, 170:14-23. When asked during the Job Assessment Meeting whether she would need to sit immediately if she was in the middle of helping a member, Hirlston first responded that this is "sorta what she does now" (thereby not meeting member service standards), then later said "she would continue until she is finished with the member" (thereby exceeding her restrictions). A-861-62, 864; SA-39, 41-42, 43:9-10, 52:20-53:1, 55:16-20, 67:13-17, 77:6-10, 87:2-7, 88:20-89:3, 136:2-6, 142:1-7. Neither Hirlston nor Costco identified an appropriate accommodation. A-864 (meeting notes: Hirlston "does not know

---

[15] Hirlston does not challenge the jury's implicit finding that lifting and member service were essential functions. AOB-37-39.

what to suggest" and "Costco indicated that they have no suggestions for modifications").

On this record, whether Hirlston could access the storage cubbies using a grabber was ultimately irrelevant. Her inability to perform other essential functions still rendered her unqualified for the Optical Manager position, as crystallized by testimony from Donaldson and Frazier, both of whom participated in the Job Assessment meeting:

— Frazier: "there were other restrictions that precluded her from her job, so, again, like the grabber, *it kind of became irrelevant* based on the other restrictions." SA-44:4-7 (emphasis added).

— Frazier: "we said that we'd look into [the grabber]," but "[w]e could not find an accommodation to allow her to be able to perform the other essential functions of the job, so therefore there was no need to at that time." SA-38:5-11.

— Donaldson: "we couldn't get past certain restrictions to do the research on others." SA-77:19-21.

The jury, having heard voluminous evidence that Hirlston was not qualified for reasons having nothing to do with the storage cubbies, would not have reached a different verdict had the photos been excluded. Thus, Hirlston is not entitled to a new trial.

## IV.    Hirlston is Not Entitled to a New Trial on the Retaliation Claim

Hirlston's challenge to the ADA retaliation ruling rests solely on her other claims of error. AOB-40. Because those challenges fail for the reasons stated in Parts I to III, judgment on the retaliation claim must be affirmed.

## CONCLUSION

The judgment in Costco's favor must be affirmed in all respects.

DATED: November 4, 2022              Respectfully submitted,

By: /s/ *Erin Dougherty Foley*
    Erin Dougherty Foley
    Sara Eber Fowler
    Kyla Joanne Miller
    SEYFARTH SHAW LLP
    233 South Wacker Drive,
    Suite 8000
    Chicago, Illinois 60606
    Phone: (312) 460-5000
    Fax:     (312) 460-7000

    Kiran Aftab Seldon
    James M. Harris
    SEYFARTH SHAW LLP
    2029 Century Park East, Ste. 3500
    Los Angeles, California 90067
    Phone: (310) 277-7200
    Fax: (310) 201-5219

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)

The undersigned, counsel of record for Defendant-Appellee Costco Wholesale Corporation, hereby certifies that this brief conforms to the rules contained in FRAP 32(a)(7). This brief was prepared in 13-point Century font in the body and 12-point Century font in the footnotes and was prepared using Microsoft Word. The referenced word processing system indicates a total word count of 13,859, excluding the parts of the Brief exempted from the word count by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

Dated: November 4, 2022                  /s/ *Erin Dougherty Foley*
                                         Erin Dougherty Foley

## PROOF OF SERVICE

The undersigned, counsel for Costco Wholesale Corporation, hereby certifies

that on November 4, 2022, an electronic copy of this brief was served by ECF

on the following counsel of record for Appellant Karen R. Hirlston:

Sandra Blevins
Jamie A. Maddox
Betz + Blevins
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
litigation@betzadvocates.com

Dated: November 4, 2022

/s/ *Erin Dougherty Foley*
Erin Dougherty Foley

Counsel for Costco Wholesale
Corporation